## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 18 2017, 10:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Amy E. Karozos<br>Greenwood, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Abigail R. Recker<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of Jay.C. and L.R., Jr. (Minor Children), Children in Need of Services,

    and

Jaq.C. (Mother),

*Appellant-Respondent,*

      v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 18, 2017

Court of Appeals Case No. 49A04-1706-JC-1401

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Rosanne Ang, Magistrate

Trial Court Cause Nos. 49D09-1608-JC-2765 49D09-1608-JC-2766

**Bailey, Judge.**

# Case Summary

[1] Jaq.C. ("Mother") has two sons with L.R. ("Father"), Jay.C. and L.R., Jr. ("Children"). After investigating a report involving domestic violence, the Marion County Department of Child Services ("DCS") filed a petition alleging that Children were Children in Need of Services ("CHINS"). Following a hearing, the juvenile court adjudicated Children CHINS, and Mother now challenges that adjudication.[1] She presents the sole issue of whether there is sufficient evidence to support the CHINS adjudication.

[2] We affirm.

# Facts and Procedural History

[3] On July 14, 2016, DCS received a report alleging that Father struck Mother while Children were present. DCS investigated the report, which led to the filing of a CHINS petition. In its petition, DCS alleged that Children were CHINS because, among other things, Mother failed to provide Children "with a safe, stable, and appropriate living environment" that was free from domestic violence. App. Vol. II at 42. The juvenile court held a hearing on the CHINS petition—at which time Children were four years old and two years old—and the court subsequently entered an order adjudicating Children CHINS. The

---

[1] Father did not appear during the CHINS proceedings, and he does not participate in this appeal.

juvenile court later held a dispositional hearing, after which the court entered a dispositional order on May 30, 2017. This appeal ensued.

## Discussion and Decision

[4] In adjudicating Children CHINS, the juvenile court, *sua sponte*, entered written findings and conclusions. "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We review the remaining issues under the general judgment standard, wherein a judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). In conducting our review, "[w]e neither reweigh the evidence nor judge the credibility of the witnesses," *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012), and we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Moreover, we consider only the evidence and the reasonable inferences that support the court's decision. *In re S.D.*, 2 N.E.3d at 1287. We will not set aside the findings or the judgment unless we identify clear error, *see* T.R. 52(A), which is error that "leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992).

[5] Here, DCS alleged that Children were CHINS under Indiana Code Section 31-34-1-1. Under this section, a child under eighteen years old is a CHINS if

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. DCS bears the burden of proving by a preponderance of the evidence that a child is a CHINS. *See* I.C. § 31-34-12-3. A preponderance of the evidence is the greater weight of the evidence. *See Galloway v. State*, 938 N.E.2d 699, 708 n.7 (Ind. 2010).

[6] A child's exposure to domestic violence can support a CHINS adjudication under Section 31-34-1-1. *See In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010); *see also In re D.P.*, 72 N.E.3d 976, 984 (Ind. Ct. App. 2017) ("[A] single incident of domestic violence in a child's presence may support a CHINS finding, and [the violence] need not necessarily be repetitive."). Here, the evidence favorable to the CHINS adjudication indicates that Father had a history of being violent with Mother, that Children witnessed domestic violence, and that Children needed play therapy because they witnessed the violence. Moreover, the juvenile court determined that Children's "physical and emotional safety [wa]s

at risk" until Mother "fully addressed" the issue of domestic violence. App. Vol. II at 132.

[7] Mother does not dispute that Children were exposed to domestic violence. Rather, Mother argues that there is insufficient evidence to support the CHINS adjudication because domestic violence was no longer an issue; thus, according to Mother, Children were no longer at risk. Mother focuses on the actions she took after the CHINS petition was filed, including trying to get a protective order, taking domestic violence classes, and establishing a residence at a location unknown to Father.

[8] In adjudicating Children CHINS, the juvenile court acknowledged that Mother had taken steps pertinent to remedying the issue of domestic violence, but the court was unconvinced that Mother had meaningfully addressed the risk to Children. In so determining, the juvenile court observed that Father was present when DCS initially interviewed Mother, and Mother failed to identify Father to DCS. Later, Mother sought a protective order, but at the hearing on her request, Mother indicated that Father was not a threat to her or Children. Moreover, at the fact-finding hearing, Mother was asked why Father did not know where she lived, and Mother testified that it was because of "this whole . . . case." Tr. Vol. II at 185. Further, in explaining why she moved, Mother indicated that she did not like her old neighborhood but also that she was under the impression that Children would not return to her if she lived with Father. The juvenile court ultimately determined that Mother did not cease contact with Father because of the danger he posed to her and Children, but

instead was "modifying her contact with [Father] due to . . . th[e] [CHINS] action" and the ongoing involvement of the court and DCS. App. Vol. II at 132-33. The court concluded that Mother needed "additional time . . . to work with a therapist to ensure her and . . . [C]hildren's safety from domestic violence." *Id.* at 133.

[9] In arguing that she had adequately remedied the issue of domestic violence, Mother essentially asks that we reweigh the evidence. We may not do so. Rather, the evidence and the reasonable inferences therefrom support the trial court's determination that Mother had not fully addressed the issue of domestic violence and that she would not remedy the issue without the coercive intervention of the court. Moreover, to the extent Mother argues that the danger posed to Children was too speculative, we disagree. Children had witnessed domestic violence and could verbalize what they saw, and DCS recommended play therapy to address Children's exposure to the violence. Furthermore, because of the continuing prospect of domestic violence, Children's physical and mental health remained in serious danger.[2] Thus, the evidence is sufficient to support the CHINS adjudication.

---

[2] Mother emphasizes that at the time of the dispositional hearing there were no longer concerns regarding the issue of domestic violence. Nonetheless, the evidence supports the determination that Children were CHINS at the time of the CHINS adjudication. *See* I.C. § 31-34-11-2 ("If the court finds that a child is a child in need of services, the court shall . . . enter judgment accordingly.").

Affirmed.

Kirsch, J., and Pyle, J., concur.